UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MELISSA E. DAVIS,

    Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

Case No. 2:16-cv-0312
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Terrence P. Kemp

## OPINION AND ORDER

This matter is before the Court for consideration of Plaintiff's Objections (ECF No. 20) to the Magistrate Judge's Report and Recommendation (Report and Recommendation ("Rep. & Rec."), ECF No. 19). For the reasons that follow, the Court **OVERRULES** Plaintiff's Objections and (ECF No. 20) **ADOPTS** the Report and Recommendation (ECF No. 19).

### I.

Plaintiff, Melissa E. Davis ("Davis"), filed an application with the Commissioner of Social Security ("Commissioner") for Disability Insurance Benefits in September 2011, alleging disability since June 10, 2011, due to various conditions including scoliosis, carpal tunnel syndrome, Morton's neuroma of the right foot, fibromyalgia, hypothyroidism, anxiety, depression, and attention deficit disorder. (Rep. & Rec. at 2.) Plaintiff was given a hearing before an Administrative Law Judge ("ALJ") on September 17, 2014 after the initial administrative denial of her claim. At the time of the hearing, Davis was forty-four years old, had a high school degree with some college work, and was a licensed cosmetologist. (*Id.* at 1.)

On October 21, 2014, the ALJ upheld the denial of disability benefits to Plaintiff. The ALJ concluded that Plaintiff had severe impairments including "mild to moderate degenerative

disc disease of the cervical spine from C4–C6; disc herniations at T7–T8 and T10–T11 without significant spinal stenosis or cord signal abnormality; degenerative disc disease at L4–L5; diagnosis of osteoarthritis of multiple sites/fibromyalgia; Morton's neuroma of the right foot; and bilateral carpal tunnel syndrome status post left-sided release in December 2011." (Certified Administrative Record ("Record") at 15, ECF No. 11.) Nevertheless, the ALJ concluded that that although Plaintiff could not perform her past relevant work, she had the residual functional capacity to perform a range of sedentary work such as a bench worker or a general sorter. (*Id.* at 19.)

The Appeals Council denied review on February 17, 2016. Davis filed her statement of specific errors on August 11, 2016, to which the Commissioner responded on November 23, 2016. On March 20, 2017, Magistrate Judge Kemp recommended overruling Davis' statement of specific errors and entering judgment in favor of the Commissioner. (ECF No. 19.) Davis filed a timely objection. (ECF No. 20.)

**II.**

This Court reviews a final decision by the Commissioner pursuant to 42 U.S.C. § 405(g). In cases where a Magistrate Judge has issued a Report and Recommendation, and a party has properly filed objections to it, the district court conducts a *de novo* review of those parts of the Report and Recommendation to which the party objects. 28 U.S.C. § 636(b)(1).

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is

defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

### III.

Davis asserts that the ALJ erred by not according any weight to the opinion of her treating rheumatology specialist, Dr. Robert L. Vawter. (Plaintiff's Objections to the Rep. & Rec. ("Pl. Obj.") at 2, ECF No. 20.) Specifically, Davis argues that both the ALJ and Magistrate Judge erred in finding Dr. Vawter's opinion to be inconsistent with that of Dr. Michael Wayt, her primary care physician. (Pl. Obj. at 2–3.)

It is well settled that "the opinions of treating physicians are given substantial, if not controlling, deference." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citing *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984)); 20 C.F.R. § 404.1527(d)(2). An ALJ gives deference to the opinions of treating sources "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's]

3

medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . . ." 20 C.F.R. § 416.927(c)(2); *Blakley*, 581 F.3d at 408. If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2). However, an ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence of record or is not supported by clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527(d)(2).

An administrative law judge discounting the opinion of a treating provider must set forth "good reasons" that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). An ALJ's failure to follow the procedural rules for assigning weight to the opinions of treating sources and giving good reasons for the weight assigned constitutes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record. *Id.* at 403.

Davis received treatment from Dr. Vawter from May 2013 through July 2014.[1] Dr. Vawter diagnosed Davis with fibromyalgia, osteoarthritis, and degenerative changes of the cervical, thoracic, and lumbar spine. The ALJ noted, however, that the osteoarthritis diagnosis was not made with the benefit of any objective medical testing. (Record at 21.) Dr. Vawter's treatment notes from 2013 describe Plaintiff as being in "minor discomfort" from the fibromyalgia and in April 2014 notes that she has some discomfort but "seems to be a little better

---

[1] According to Davis, she began receiving treatment from Dr. Vawter every four to six months beginning in December 2011. (Record at 21, 617; Pl. Obj. at 3.) However, the Record only contains notes from Dr. Vawter at Wheeling Hospital on December 15, 2011 and for treatment on October 14, 2013 and April 14, 2014.

4

. . ." (Record at 579.) Shortly after however, in July 2014, Dr. Vawter completed a check-list opinion, in which he asserted that Davis could not lift any weight, and could only sit, stand, and walk for less than two hours each workday. He estimated that Davis would miss three or more days of work per month due to her diagnoses. (Record at 22.)

Plaintiff also received treatment during the relevant time period of January 2010 to April 2014 from her primary care provider, Dr. Wayt, from whom she received routine treatment for hypothyroidism, neck pain, right shoulder pain, chronic low back pain, and intermittent reports of radicular pain/numbness of the power extremities, fatigue, and tingling of the right upper extremity. Also during this time period, various x-rays and MRIs were taken. MRI results revealed mild stenosis from C4 to C6, degenerative disc disease at L4–L5 without any stenosis, and a disc herniation at T7–T8 and T10–T11 without significant spinal stenosis or cord signal abnormality. X-rays revealed mild to moderate degenerative changes from CF to C6. In 2011, a neurosurgeon told Plaintiff there was no need to perform surgery on her spine. (Record at 467.) An x-ray of the right shoulder in November 2011 came back normal and x-rays of the shoulders, wrists, and hips in December 2011 were also negative. Dr. Wayt indicated on August 26, 2012 that he did not feel that Plaintiff was disabled. (*Id.* at 546.) In 2013, Plaintiff informed Dr. Wayt that her back pain had improved and that she no longer needed pain medication. (*Id.* at 575.)

For purposes of the treating physician rule, Davis received treatment from both Dr. Wayt and Dr. Vawter on a regular basis. A physician is a treating source if he or she has provided medical treatment or evaluation and has had an ongoing treatment relationship with the claimant "with frequency consistent with accepted medical practice for the type of treatment and/or evaluation [that is] typical for the [treated condition(s)]." *Blakley*, 581 F.3d at 407 (quoting 20 C.F.R. § 404.1502). As a matter of law, more than one examination is required to attain

treating-physician status. *Id.* The certified record contains treatment notes from at least three visits with Dr. Vawter in 2013 and 2014 in addition to his functional capacity evaluation, as well as reports from numerous visits with Dr. Wayt dating back to 2010.

Davis objects to the Magistrate Judge's conclusion that the opinion of Dr. Wayt is inconsistent with that of Dr. Vawter. With respect to Dr. Wayt's findings, she argues:

> In January of 2012, Dr. Wayt assessed her as suffering from fibromyalgia and chronic pain syndrome. ([Record at] 570). In October of that year, Dr. Wayt mentions in his examination the continued complaint of generalized pain. In his plan, contemplated after examination and review of the claimant's history, he recommended hot and cold packs, massage and back strengthening exercises as a way to deal with the fibromyalgia pain. ([Record at] 569). In May of 2014, she discussed her fibromyalgia pain with Dr. Wayt, stating that her pain was slightly worse from that of her last visit and that it was causing her frustration, anxiety and depression. Dr. Wayt observed that she was positive for fatigue, paresthesias, anxiety, crying spells, depression, feelings of stress, sadness and sleep disturbance. ([Record at] 607). All of these excerpts from Dr. Wayt's records confirm Dr. Vawter's findings, and therefore are not inconsistent and should not support the ALJ's erroneous allotment of weight given to Dr. Vawter's report.

(Pl. Obj. at 2.) Davis concludes that because there are common findings between the assessments of Dr. Wayt and Dr. Vawter that Dr. Vawter's opinion should not be discredited as inconsistent.

An ALJ has good cause to reject the opinion of one treating physician where there were contrary opinions of other treating physicians supported by objective medical evidence. *O'day v. Comm'r of Soc. Sec.*, No. 1:13-CV-452, 2015 WL 225467, at *10 (W.D. Mich. Jan. 16, 2015) (citing *Milam v. Bowen*, 782 F.2d 1284, 1287 (5th Cir. 1986)). Although there are consistencies between the two assessments, such as the diagnosis of fibromyalgia, Plaintiff's argument does not help resolve the remaining inconsistencies noted by the ALJ. Dr. Vawter completed his Functional Capacity Assessment on July 22, 2014, in which he concludes that Plaintiff's conditions would preclude her from ever lifting any weight and could not sit, stand, or walk for more than two hours at a time. (Record at 620–21.) However, this assessment appears to be in

conflict with Dr. Vawter's own treatment notes describing Plaintiff's physical health as stable and noting only a "minimal tenderness over the major muscle groups." (*Id.* at 614.) It also conflicts with the treatment notes from Dr. Wayt's July 28, 2014 exam, in which he concluded that Plaintiff's musculoskeletal range is "normal" with muscle strength at 5/5 in all major muscle groups. (*Id.* at 651.) The ALJ also noted that "the benign radiological evidence mentioned earlier tends to discount" Dr. Vawter's diagnosis of osteoarthritis. (Record at 21–23.) Thus, the ALJ properly chose to discount the opinion of Dr. Vawter as inconsistent with other substantial evidence in the record.

Moreover, this inconsistency was only one reason out of several mentioned by the ALJ for why he chose to give no weight to the opinion of Dr. Vawter. As summarized in the Rep. & Rec., the ALJ justified his decision not to accord any weight to Dr. Vawter's opinion expressed in a form he completed for six specific reasons:

> (1) the form is a checklist and provided no objectively-based explanation for the limitations expressed on it; (2) Dr. Vawter did not confirm the presence of osteoarthritis by any objective testing; (3) Dr. Vawter's treatment notes, indicating that Plaintiff's condition was stable, are inconsistent with this evaluation; (4) the opinion conflicts with the notes of "the claimant's primary care provider" (presumably Dr. Wayt) whose notes "reveal normal objective findings from a musculoskeletal and neurological standpoint" and who did not believe that Plaintiff was disabled; (5) Plaintiff's activities of daily living are in excess of the capabilities stated on the form; and (6) the assertion that Plaintiff would miss more than three days of work per month is "based upon pure speculation and conjecture."

(Rep. & Rec. at 11–12 (citing Record at 22–23).) The Magistrate Judge found that "although the ALJ may not have been entirely accurate when he said that Dr. Vawter cited no findings in support of his opinion," he nevertheless "acted within his 'zone of choice' on the issue given the conflicting evidence." (*Id.* at 12–13.) More specifically, "there was no objective evidence of osteoarthritis of multiple joints, which diagnosis appear to play a large part in Dr. Vawter's

7

opinion." (*Id.* at 12.) Even so, the Magistrate Judge gathered that "even though the ALJ said that he gave no weight to Dr. Vawter's opinion, he still credited some of Dr. Vawter's medical findings in deciding that Plaintiff was limited to a range of sedentary work." (*Id.* at 12.) The Magistrate Judge ultimately concluded that Dr. Vawter's opinion, while containing some support in the record, "cannot be said to be consistent with the entire record." (*Id.* at 13.) The Court agrees and finds that the ALJ's decision to discount Dr. Vawter's opinion was supported by substantial evidence. As such, the Court defers to that decision even if substantial evidence in the record would have supported an opposite conclusion.

As previously raised in her statement of specific errors, Davis again argues that Dr. Vawter's opinion as a specialist should be favored over that of her primary care doctor, that Dr. Vawter's assessment of Plaintiff's physical capacity was not in conflict with Plaintiff's own account of her daily living activities as the ALJ found, and that the Magistrate Judge failed to consider the frequency and duration of Dr. Vawter's treatment.

Although the opinion of a specialist is generally entitled to more weight than the opinion of a general practitioner, here Dr. Wayt was also a treating physician and therefore his opinion was also entitled to deference. *See Henderson v. Apfel*, 142 F. Supp. 2d 943, 946 (W.D. Tenn. 2001) ("[A]s a general rule, treating physicians, as well as specialists, are granted greater deference than general practitioners."); *see also* 20 C.F.R. § 404.1527(d)(5). The ALJ set out sufficient reasons why Dr. Vawter's opinion was inconsistent with his own treatment notes and the objective medical evidence and thus chose to credit the opinion of Dr. Wayt instead.

With respect to Plaintiff's daily living activities, the ALJ found that "Dr. Vawter's assertion that the claimant can never lift even less than ten pounds is completely unfounded by the claimant's reports elsewhere that she has been able to perform several different activities of

daily living," such as taking care of her children, attending church twice a week, and working at her church's nursery. (Record at 16, 23.) Plaintiff argues that it is unfair for the ALJ to compare her daily living activities to potential work activities. (Pl. Obj. at 3.) Even if Plaintiff's reported activities do not demand the same exertion level as in a work setting, they conceivably involve some exertion that requires lifting some weight. Thus, the ALJ was justified in discounting the opinion of Dr. Vawter when his assessment of her physical capacity was plainly inconsistent with Plaintiff's own statements.

Lastly, the duration of Plaintiff's treatment with Dr. Vawter treatment is not particularly persuasive in light of her extensive treatment history with Dr. Wayt. As other courts have noted, the frequency of Dr. Vawter's care indicated from the record just barely qualifies him as a treating source. *See Mitchell v. Comm'r of Soc. Sec.*, No. 1:14 CV 1573, 2015 WL 3454743, at *8 (N.D. Ohio May 29, 2015) (noting that more than two or three visits just meets the acceptable limit for a treating source).

Finally, Davis also generally objects to the ALJ's failure to "adequately account for Plaintiff's fibromyalgia; adequately weight the non-medical source evidence; accord adequate weight to the opinion of the consulting examining physician; and determine that the Plaintiff's credibility is not supported by substantial evidence." (Pl. Obj. at 4.) After a *de novo* review, the Court concludes that the ALJ's decision was supported by substantial evidence. The ALJ set forth sufficient "good reasons" for why he chose to afford no weight to the opinion of Dr. Vawter and instead chose to credit the opinion of Plaintiff's other treating physician, Dr. Wayt. *Rogers*, 486 F.3d at 242. Accordingly, The Magistrate Judge correctly found that substantial evidence existed to support the ALJ's conclusions that Plaintiff was not disabled, and that the ALJ did not err in failing to accord controlling weight to the opinions of Plaintiff's treating

rheumatologist Dr. Vawter.

### IV.

Upon *de novo* review, in accordance with the provisions of 28 U.S.C. § 636(b)(1)(B), the Court **OVERRULES** Plaintiff's Objections (ECF No. 20) to the Report and Recommendation insofar as they relate to the ALJ's development of the record. The Report and Recommendation is hereby **ADOPTED** and judgment is entered in favor of the Commissioner.

**IT IS SO ORDERED.**

9-20-2017
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT CHIEF JUDGE**